# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

**FILED**

AUG – 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

------------------------------------------------------------

ELAINE L. CHAO,
SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,    :

                      Plaintiff,    :      Civil Action

    v.

                             :      No. _____

CALEB A. GRAY-BURRISS, 3838 Carpenter    :
Street SE, Washington DC 20020; NATIONAL
ASSOCIATION OF SPECIAL POLICE    :
AND SECURITY OFFICERS,
1101 30th Street NW, Washington DC, 20020;    :
NATIONAL ASSOCIATION OF
SPECIAL POLICE    :
AND SECURITY OFFICERS PENSION FUND,
1101 30th Street NW, Washington DC, 20020;    :      **06 1382**
NATIONAL ASSOCIATION OF
SPECIAL POLICE    :
AND SECURITY OFFICERS HEALTH PLAN
AND TRUST,    :
1101 30th Street NW, Washington DC, 20020;
THE HARBOR BANK OF    :
MARYLAND, 6820 Riverdale Road,
Riverdale, MD 20737;    :
DECO SECURITY SERVICES, 14275 Golf
Course Drive, Suite 250, Baxter, MN 56425;    :
SECTEK, INC., 11413 Isaac
Newtown Square, Reston, VA 20190; and    :
AMERICAN SECURITY PROGRAMS, INC.
22900 Shaw Road, No. 101-1, Dulles, VA 20166,    :

                    Defendants.    :

------------------------------------------------------------

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED

## I.    INTRODUCTION

This matter is before the Court on the application of Elaine L. Chao, Secretary of Labor,

United States Department of Labor, for a temporary restraining order and preliminary injunction

under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*

The Secretary has filed this application as a result of breaches of fiduciary duties under ERISA by

defendants Caleb A. Gray-Burriss ("Burriss") and the National Association of Special Police and

Security Officers ("NASPSO").

Burriss is the Executive Director and Secretary-Treasurer of NASPSO and acts on behalf

of NASPSO.  NASPSO is a labor union that represents security guards in the Washington, DC

metropolitan area.  There are approximately eight hundred members of the union.  NASPSO has

collective bargaining agreements with approximately ten employers.  Burriss and NASPSO

established the NASPSO Pension Plan ("Pension Plan") or about June 2004, and since that time

Burriss and NASPSO have been solely responsible for the administration of the Pension Plan and

its assets.  Since the establishment of the Pension Plan, Burriss and NASPSO have engaged in

repeated and ongoing violations of ERISA that warrants their removal from their fiduciary

positions with respect to the Pension Plan, as well as their removal as fiduciaries of the NASPSO

Health Plan and Trust ("Health Plan").  Only this Court, in the exercise of its equity power, can

provide the urgently necessary relief here sought.  For the reasons stated and upon the authority

more fully discussed below, the Secretary's application should be granted.

The Secretary's application is supported by the Declaration of Donald Criswell, an

investigator with the Washington District Office of the Employee Benefits Security

Administration ("EBSA")(Exhibit No. 1).  This written statement is based on the documents and

2

interview statements obtained by the EBSA during its investigation into the operation and administration of the NASPSO Pension Plan and Health Plan. Most recently, on July 18, 2006, defendants Burriss and NASPSO have withdrawn Pension Plan assets and deposited those assets into a union account despite being told by Investigator Criswell that such conduct violates ERISA and despite agreeing to no longer transfer assets out of the Pension account.

For these reasons, and as set forth more fully below, the Secretary seeks a temporary restraining order and preliminary injunction removing Burriss and NASPSO as fiduciaries of the Pension Plan and Health Plan and enjoining them from exercising any custody, control, or decision-making authority with respect to these Plans; freezing all assets of defendants Burriss and NASPSO that contain assets of the NASPSO Pension Plan; appointing an independent fiduciary, David Lipkin of Metro Benefits, Inc., to manage and administer the Pension Plan; ordering the lone employer that continues to contribute to the Pension Plan not to forward contributions to Burriss and NASPSO and instead forward the contributions to the independent fiduciary; and ordering the two employers that contribute to the Health Plan not to forward contributions to Burriss and NASPSO and instead contribute to the current third party administrator, FCE Benefit Administrators, Inc.

## II.    FACTUAL BACKGROUND

Burriss and NASPSO established the Pension Plan on or about June 2004. NASPSO and Burriss opened a Pension Plan account with the Harbor Bank of Maryland ("Harbor Bank") on or about June 16, 2004. The Pension Plan account is known as the "National Association of Special Police & Security Officers Pension Fund" (Acct. No. 1100058674). There are no formal, written Pension Plan document associated with the Plan. The Plan is operated and administered solely by

3

Burris and NASPSO.  (Govt. Exh. 1, Declaration of Donald Criswell).

The Plan operates as follows: Pension Plan contributions are based upon the terms of three collective bargaining agreements ("CBAs") that NASPSO has entered into with employers of union-member employees.  Since June 2004, the three employers that have contributed employer contributions to the Pension Plan are SecTek, Inc. ("SecTek"), Deco Security Services, Inc. ("Deco") and Ares Group, Inc. ("Ares") (collectively, "employers").  SecTek, Deco, and Ares contributed to the Pension Plan on a monthly basis.  The checks sent by Deco, SecTek, and Ares were generally made payable directly to the Pension Plan, or alternatively, to NASPSO for contribution into the Pension Plan.  While all three employers have assets in the Pension Plan, only Deco continues to make employer contributions to the Plan.  (Govt. Exh. 1, ¶¶ 3g-3k).

The employers are federal contractors which have executed contracts with the federal government under the Service Contract Act.  These agreements set the minimum hourly wage rate and fringe benefit rate employers must pay to their employees.  The employers have also signed CBAs obligating them to pay the Pension Plan a set amount per hour worked.  The employers chose to pay their required fringe benefits by paying into the Pension Plan.  (Govt. Exh. 1, ¶¶ 3h-3i).

The union member employees are immediately one hundred percent vested in the Pension Plan.  When employees leave employment, they are entitled to request and receive a distribution after forwarding Burris a written distribution request.  In order to make a withdrawal or distribution from the Pension Plan, union members are to verbally notify Burriss and NASPSO of their intention to withdraw their pension assets and follow-up any verbal request with a written request for distribution.  (Govt. Exh. 1, ¶ 3j).

The employers generally sent the contributions to NASPSO, along with the names of the employees and the contribution amount for each employee. The pay stubs of the employees reflect the contribution amounts forwarded by the employer for the Pension Plan. (Govt. Exh. 1, ¶ 3l).

Harbor Bank records reflect that NASPSO and Burriss have deposited $122,635.66 into the Pension Plan account since the inception of the Pension Plan. However, since that time, Burriss has withdrawn a total of $95,997.73 from the Pension Plan account. There have been twenty-one withdrawals payable to "cash," five to "Caleb A. Gray-Burriss," and eleven payable to NASPSO. There have also been a total of eleven checks or transfers directly from the Pension Plan into another account at Harbor Bank. This account is identified as the NASPSO Membership Dues account (Acct. No. 1100058633). (Govt. Exh. 1, ¶¶ 3n-3p).

Investigator Criswell informed Burriss during interviews with Burriss on June 22, 2006 and June 26, 2006 that taking money from the Pension Plan and depositing it into the Membership Dues account constituted a violation of ERISA. Although Burriss agreed not to take any more withdrawals from the Pension Plan account, on July 18, 2006 Burriss again took money from the Pension Plan and deposited it into the Membership Dues account. More specifically, on July 18, 2006, Burriss performed an internet banking transfer in which he removed $2,500 from the Pension Plan and deposited the money into the Membership Dues account. (Govt. Exh. 1, ¶¶ 3q-3r).

In addition to the Pension Plan account, Burriss and NASPSO also have discretion and control over the assets of at least one other union-sponsored plan, a health and welfare benefit plan. In fact, Burriss has represented that he has taken assets of the Pension Plan, purchased

5

certificates of deposits with the assets, and that these CDs are currently in the name of the Health

Plan. The value of the three CDs amounts to approximately $45,000. The account numbers of

these CDs, which are held at Harbor Bank, are as follows: 15035, 15054, and 15061. (Govt. Exh.

1, ¶¶ 3s-3t).

Burriss established and became the union trustee of the NASPSO Health Plan and Trust

("Health Plan") on January 1, 2006. The Health Plan is intended to provide medical benefits for

union member employees of participating employers. There are currently two employers which

participate in the Health Plan, SecTek and American Security Programs, Inc. (Govt. Exh. 1, ¶¶

3u-3v).

The Health Plan is administered by FCE Benefit Administrators, Inc. ("FCE"), a third

party administrator headquartered in Burlingame, California. FCE, under the terms of its

agreement with NASPSO, performs numerous delineated duties with respect to the administration

of the Health Plan. With respect to the Health Plan's participation procedures, SecTek and

American Security generally forward their Health Plan contributions to NASPSO on a monthly

basis. NASPSO and Burriss are currently responsible for forwarding the employers' Health Plan

contributions to a Health Plan account with Harbor Bank. The Health Plan is intended to provide

medical benefits for union member employees of participating employers. NASPSO is

responsible for appointing, removing, and monitoring the union trustee of the Health Plan. The

Health Plan provides that the union trustee, Burriss, and employer trustee, Stephens, are the

committee that runs the Plan. The trustees are to take and hold any contributions to the Plan. The

trustees forward Health Plan contributions to a Health Plan account for payment of health claims.

Burriss then forwards Health Plan contributions to FCE, a third party administrator, for payment

6

of health claims. (Govt. Exh. 1, ¶¶ 3u-3w).

The Health Plan account is identified in Harbor Bank account statements as "NASPSO Health and Welfare." (Acct. No. 1100058682). As of July 25, 2006, the Health Plan account balance was $112,142.22. (Govt. Exh. 1, ¶¶ 3y).

## III.    ARGUMENT

### A.    ERISA: An Overview

ERISA is a comprehensive remedial statute designed to promote and protect the interests of participants and their beneficiaries in employee benefit plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983); *Nachman Corp. v. Pension Ben. Guaranty Corp.*, 446 U.S. 359, 361-62 (1980). Congress intended to ensure the equitable character and financial soundness of employee benefit plans "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." ERISA § 2(b), 29 U.S.C. § 1001(b). Those fiduciary standards of conduct are codified in ERISA § 404(a), 29 U.S.C. § 1104(a). The fiduciary obligations imposed by ERISA are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir.), *cert. denied*, 459 U.S. 1069 (1982), and are to be interpreted and applied "bearing in mind the special nature and purpose of employee benefit plans." *Dononvan v. Cunningham*, 716 F.2d 1455, 1464 (5th Cir. 1983), *cert. denied*, 467 U.S. 1251 (1984).

Fiduciaries of ERISA covered plans must comport their actions and conduct to the standards enunciated in sections 404(a) and 406 of the Act. The duties relevant to the present action are: the duty to act solely in the interest of the plan's participants and for the exclusive

purpose of providing benefits to them, section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A);

and the duty to act prudently and in a manner that a prudent man acting in a like capacity and

familiar with the matter would use, section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B).

In addition to the general fiduciary standards set forth in Section 404(a) of ERISA, Section

406 of the Act, 29 U.S.C. § 1106, prohibits certain specified transactions "because they inherently

compromise the duty of trust that is imposed upon a fiduciary." *Beck v. Levering*, 947 F.2d 639,

641 (2d Cir. 1991). In particular, section 406(a) of ERISA prohibits fiduciaries from the use of

plan assets, by or for the benefit of, a party in interest (29 U.S.C. § 1106(a)(1)(D)). The term

"party in interest" includes fiduciaries to the Plans such as defendants Burriss and NASPSO (29

U.S.C. § 1002(14)(A)).

Section 406(b) of ERISA also clearly prohibits self-dealing. In pertinent part, it provides

that a fiduciary shall not deal with the assets of a plan in his own interest or for his own account.

29 U.S.C. § 1106(b)(1). By forbidding self-dealing, ERISA avoids the obvious danger that a

fiduciary will sacrifice the plans' interests for his own personal gain. These standards should be

liberally construed in favor of protecting the participants in employee benefits plans. *Teamsters*

*Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 123 (4th Cir. 1991).

Under ERISA § 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5), the Secretary is

authorized to bring civil actions for equitable and injunctive relief, and to enforce ERISA's

provisions. This Court has broad authority to grant "equitable or remedial relief as the court may

deem appropriate" including bars on fiduciary and service provider status. ERISA § 409(a), 29

U.S.C. § 1109(a). In applying ERISA's remedial provisions, the courts have a duty to fashion the

remedy which is most advantageous to plan participants and beneficiaries and which best

8

effectuates the purpose of the trust. *Donovan v. Mazzola*, 716 F.2d 1226, 1235 (9th Cir. 1983),

*cert. denied*, 464 U.S. 1040 (1984). Because defendants Burriss and NASPSO have failed to

adhere to ERISA standards outlined above, the Secretary is requesting the relief set forth in her

application for a temporary restraining order and preliminary injunction.

**B.    The Violations of ERISA**

**1.    NASPSO's Pension Plan is an ERISA-covered Plan**

Under Section 3(2)(A) of ERISA, a pension plan is defined as:

> "any plan, fund, or program which was heretofore or is hereafter established or
> maintained by an employer or by an employee organization, or by both, to the
> extent that by its express terms or as a result of surrounding circumstances such
> plan, fund, or program--
>
> (i)    provides retirement income to employees, or
>
> (ii)   results in a deferral of income by employees for periods extending
>        to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the
> method of calculating the benefits under the plan or the method of distributing
> benefits from the plan.  29 U.S.C. § 1003(2)(a).

While Section 402 of ERISA requires the settler of the Plan to create a written document, a plan

can nevertheless be covered by ERISA even though the plan is not memorialized.  Burriss and

NASPSO are fiduciaries of an ERISA-covered pension plan even though it appears that no formal,

written plan documents exist.  It is well established that coverage can exist without a formal,

written plan.  Instead, in determining whether a plan exists, a court is to determine whether a

reasonable person could ascertain from the surrounding circumstances: 1)intended benefits, 2)

intended beneficiaries, 3) source of financing, and 4) procedures for receiving benefits. *Donovan*

*v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982).  In applying the factors established in

*Dillingham*, the Circuit Court for the District of Columbia has found that coverage exists even if

9

the four *Dillingham* factors are not present. *Kenney v. Roland Parson Contracting Corp.*, 28 F.3d 1254, 1257-58 (D.C. Cir. 1994)(finding that an ERISA-covered plan existed where the plan lacked the third *Dillingham* factor, a source of financing).

Since all of the *Dillingham* factors can be found with respect to the NASPSO Pension Plan, the NASPSO Pension is an ERISA-covered plan. First, the Pension Plan has intended benefits as the employers intended to provide pension benefits to their employees. Each employee is one hundred percent vested in these contributions. Second, the intended beneficiaries are the union-member participants. Employee pay stubs reflect that money is forwarded by the employer to NASPSO for the benefit of the employee. Third, there is a well-established source of financing in that the employers typically send their employer contribution checks to the Pension Plan on a monthly basis. Fourth, there is a procedure for receiving benefits in that employees are entitled to take distributions from the Plan upon termination of employment. The procedure involves making a written request to Burriss or NASPSO for a withdrawal or distribution from the Pension Plan.

## 2. Defendant Burriss and NASPSO are fiduciaries and parties in interest of the Pension Plan as defined by ERISA.

Burriss controls the union, NASPSO. Burriss and NASPSO have total control of the Pension Plan. They have received contributions, deposited contributions, and made withdrawals from the Pension Plan for both lawful and unlawful purposes. Therefore, Burriss and NASPSO were fiduciaries as they controlled and made decisions about Plan assets. A fiduciary is defined at ERISA § 3(21)(A), which provides in pertinent part:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control

10

> respecting management of such plan or exercises any authority or
> control respecting management or disposition of assets, . . .

29 U.S.C. § 1002(21)(A) (i). The United States Circuit Court for the District of Columbia has

noted that there are two classes of fiduciaries under this definitional section: a) those who

exercise any discretionary authority or discretionary control respecting management of the plan or

b) those who exercise any authority or control respecting management or disposition of assets.

*Chao v. Day*, 436 F.3d 234, 235 (D.C. Cir. 2006). In this case, defendants Burriss and NASPSO

clearly qualify as fiduciaries under either of the fiduciary clauses. They both clearly exercised the

requisite authority or control respecting the management of the assets in the Pension Plan.

Under ERISA, a person may become a fiduciary if she or he exercises *de facto* control

over a fiduciary function. *See Concha v. London* , 62 F.3d 1493 (9th Cir. 1995) ("there need not

be an express delegation of fiduciary [authority] for persons performing duties of a fiduciary

nature to be considered fiduciaries"), *cert. dismissed*, 517 U.S. 1183 (1996). Courts have found

persons to become *de facto* fiduciaries in a variety of contexts. *See LoPresti v. Terwilliger*, 126

F.3d 34 (2d Cir. 1997) (officer and owner of a closely held corporation was fiduciary because he

exercised control and authority over plan funds by commingling plan assets with corporate assets

and using plan assets to pay creditors or corporation); *Yeseta v. Baima*, 837 F.2d 380, 385-86

(9th Cir. 1988) (power over withdrawals from plan confers fiduciary status on person not

designated as fiduciary by plan); *Bannistor v. Ullmann*, 287 F.3d 394 (5th Cir. 2002) (parent

corporations and officers of corporate debtor became fiduciaries by permitting commingled plan

assets to be used to pay corporate creditors); *Metzler v. Solidarity of Labor Organizations Health

and Welfare Fund*, 1998 WL 477964 at *5 (S.D. N.Y. 1998) (fiduciary status properly imposed

where individual exercises "any authority or control respecting...disposition of [a plan's] assets").

11

Simply put, Defendants' Burriss and NASPSO managed the assets of the Pension Plan and exercised discretion by withdrawing assets from the Pension Plan account. Accordingly, Burriss and NASPSO are *de facto* fiduciaries with respect to the Pension Plan within the meaning of ERISA § 3 (21)(A)(i).

Defendants Burriss and NASPSO are also parties-in-interest to the Plans. 29 U.S.C. § 1002(14)(A). As parties-in-interest, Burriss and NASPSO must not participate in prohibited transactions and can be required to disgorge profits made through such transactions. *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 120 S.Ct. 2180 (2000).

### 3. Defendants Burriss and NASPSO violated ERISA by engaging in self-dealing prohibited by ERISA section 406(b), 29 U.S.C. § 1106(b).

Burriss and NASPSO engaged in transactions that meet the classic definition of self-dealing: the use of plan assets to promote, directly or indirectly, their own financial interest or for their own account. ERISA Section 406(b) specifically forbids fiduciaries from such self-dealing. The purpose of Section 406(b) "is to 'prevent a fiduciary from being put in a position where [s]he has dual loyalties and, therefore, [s]he cannot act exclusively for the benefit of a plan's participants and beneficiaries.'" *Reich v. Compton*, 57 F.3d at 278 (citing H.R. Rep. No. 93-1280, 93d Cong., 2d Sess. (1974) *reprinted in* 1974 U.S. Code Cong. & Admin. News 5038, 5089).

Despite ERISA's prohibitions, defendants Burriss and NASPSO repeatedly engaged in prohibited transactions by taking plan assets that the employers had contributed to the Pension Plan. Some of these withdrawals are identified as "cash," some have been made to "Burriss" and others have been transfers into the Membership dues account. More specifically, since September 2004, defendant Burriss and NASPSO have made numerous unexplained cash withdrawals from the Pension account. While a total of $122,635.66 has been deposited into Pension Plan account

12

since its inception, Burriss and NASPSO have made withdrawals totaling $95,997 during that time.

Defendants Burriss and NASPSO have disregarded their obligation to the participants.

As fiduciaries, therefore, defendant Burriss and NASPSO have engaged in self-dealing of precisely the type outlawed by ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). Burriss and NASPSO are not free to direct plan assets to themselves or to the union as they see fit. Burriss and NASPSO, through transactions such as those described above, have violated ERISA by taking these plan assets.

4.    **Defendants Burriss and NASPSO violated ERISA by engaging in transactions with parties in interest specifically prohibited by ERISA Section 406(a), 29 U.S.C. § 1106(a).**

Section 406(a) of ERISA prohibits fiduciaries from entering into certain "direct or indirect" transactions with "parties in interest" because of the inherent conflicts of interest presented by these transactions. Section 406(a)(1)(D) provides: "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if [s]he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan . . ." 29 U.S.C. § 1106(a)(1)(D). Congress enacted section 406(a)(1) of ERISA in order to "categorically bar certain transactions deemed 'likely to injure a pension plan.'" *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc,* supra 530 U.S. at 241-42 Here, defendants Burriss and NASPSO engaged in prohibited transactions with parties in interest involving the transfer of plan assets to, or use of plan assets by or for, the benefit of the party in interest (29 U.S.C. § 1106(a)(1)(D)).

Essentially, the same conduct and actions described in the preceding section with respect to the violation under § 406(b) also constitutes a violation of ERISA § 406(a). Both defendants

13

constitute parties-in-interest as well as fiduciaries. Since Burriss and NASPSO made

unauthorized withdrawals from the Pension Plan and either personally used the money or

transferred the money to the NASPSO dues account, they paid themselves out of plan assets in

violation of ERISA §§406(a)(1)(D) and (b).

5.  **Defendants Burris and NASPSO violated ERISA by failing to act in the sole interest of plan participants and failing to act prudently in violation of ERISA Sections 404(a)(1), 29 U.S.C. §§ 1104(a)(1).**

Defendants Burris and NASPSO retained Plan assets for their own use rather than

maintain the assets in the Plan. In doing so, they did not act prudently. As fiduciaries,

defendants have responsibilities under ERISA § 404(a), 29 U.S.C. § 1104(a) and § 404(b), 29

U.S.C. § 1104(b) to which they must adhere. One such duty is the duty of loyalty. Under section

404(a)(1)(A)(i) a fiduciary "shall discharge his duties with respect to a Plan solely in the interest

of the participants and beneficiaries" and act "for the exclusive purpose of: (i) providing

benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). The fundamental

obligation of a fiduciary is to act "with complete and undivided loyalty to the beneficiaries."

*Donovan v. Walton*, 609 F. Supp. 1221, 1228 (S.D. Fla. 1985) (citation omitted), *aff'd*, 794 F.2d

586 (11th Cir. 1986).

ERISA also imposes a duty of prudence or diligence on defendants. Under ERISA §

404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), fiduciaries must act with the care, skill, prudence and

diligence under the circumstances then prevailing that a prudent person acting in a like capacity

and familiar with such matters would use in the conduct of an enterprise of a like character with

like aims. *See Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir.), *cert. denied*, 459 U.S. 1069 (1982)

(fiduciaries acted imprudently in failing to recognize conflicting loyalties).

By taking plan assets for their own use, defendants Burriss and NASPSO have wholly

failed to meet these high standards. Defendants Burriss and NASPSO knew that they were taking

the assets of the Pension Plan when making withdrawals from the Pension Plan. Defendants

Burriss and NASPSO use the money from the Pension Plan for their own use. The conduct of

defendants Burriss and NASPSO was not prudent. Accordingly, defendants breached their

fiduciary duties of loyalties and prudence under ERISA §§ 404(a)(1)(A) and (B).

## C.    Temporary Restraining Order and Preliminary Injunction

ERISA is a remedial statute that specifically authorizes the Secretary to bring civil actions

for injunctive relief. ERISA § 502 (a)(5), 29 U.S.C. § 1132 (a)(5). To demonstrate entitlement to

a preliminary injunction, the moving party must show: (1) a substantial likelihood of success on

the merits;   (2) that irreparable injury will result in the absence of the requested relief; (3) other

interested parties will not suffer substantial harm if the injunction is granted; and (4) that the

public interest favors entry of the injunction. *Mova Pharmaceutical Corp. v. Shalala,* 140 F.3d

1060, 1065 (D.C. Cir. 1998); *Role Models America, Inc. v. White*, 193 F. Supp. 2d 76, 79-80

(D.D.C. 2002)(citations omitted). The Court must balance the four factors. *Role Models*

*America, Inc.*, 193 F. Supp. 2d at 80, *citing Grigsby Brandford & Co., Inc. v. United States*, 869

F. Supp. 984, 1003 (D. D.C. 1994). A court may balance weakness in one or more of the four

factors against a particularly strong showing in one of the other factors. *Id., citing CityFed Fin.*

*Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C.Cir. 1995). The standards for

granting a temporary restraining order are the same as those for a preliminary injunction. *Morgan*

*Stanley D.W., Inc. v. Rothe,* 150 F. Supp. 2d 67, 71(D. D.C. 2001), citing *see Vencor Nursing*

15

*Ctrs., L.P. v. Shalala,* 63 F. Supp. 2d 1, 7 n. 5 (D. D.C. 1999); *National Football League*

*Properties, Inc. v. Coniglio,* 554 F. Supp. 1224, 1226 (D. D.C. 1998)

> **1.    The likelihood of irreparable harm to ERISA covered Plans if the injunction is not granted far outweighs the likelihood of harm to defendants Burriss and NASPSO or other interested parties if the injunction is granted.**

When a government agency seeks an injunction to prevent a violation of a statute which

specifically provides for injunctive relief, the plaintiff "need not show irreparable harm." *Illinois*

*Bell Telephone Co. v. Ill. Commerce Com'n,* 740 F.2d 556, 571 (7th Cir.1984); *Securities and*

*Exchange Commission v. Stratton Oakmont, Inc.,* 1994 Westlaw 72502, *3 (D. D.C. 1994); *U.S.*

*v. Microsoft Corporation,* 147 F.3d 935, 943 (D.C. Cir. 1998); *S.E.C v. Holschuh,* 694 F.2d 130,

144 (7th Cir. 1982)("the moving party need only show that there is a reasonable likelihood of

future violations in order to obtain relief"). Accordingly, irreparable harm may be presumed.

However, even if such a presumption was not appropriate, the present circumstances

clearly entitle the Secretary to the issuance of an injunction barring the defendants from exercising

fiduciary authority or acting as service providers with respect to Plans covered by ERISA. There

is no reason to believe that Burriss and NASPSO have discontinued their use of the Pension Plan

account. As recently as July 18, 2006, Burriss conducted an internet banking transfer in which he

withdrew $2,500 from the Pension Plan account and deposited the assets into the Membership

Dues account. Burriss' conduct is particularly egregious because his most recent transaction

occurred *after* EBSA's investigator Don Criswell interviewed Burriss and informed him that such

withdraws and transfers constituted a violation of ERISA.

The danger presented by Burriss and NASPSO and their continued administration of the

Plans is that they may withdraw assets currently in the Pension Plan, take future contributions

from Deco Security Services that are earmarked for the Pension Plan, or withdraw assets from the

Health Plan. Defendants Burriss and NASPSO have committed serious breaches of their fiduciary

duties and have harmed many people who believed that their retirements funds are secure. The

potential for future harm is great. As the Second Circuit noted in the context of issuing a

permanent injunction against fiduciaries under ERISA, "ERISA imposes a high standard on

fiduciaries, and serious misconduct that violates statutory obligations is sufficient grounds for a

permanent injunction." *Beck v. Levering*, 947 F.2d 639, 641 (2d Cir. 1991). Defendants Burriss

and NASPSO do not have a vested right to serve as fiduciaries under ERISA or to administer a

Plan. The balance of equities clearly favors issuance of an injunction barring Burriss and

NASPSO from further activities with respect to ERISA plans.

Moreover, any harm that defendants Burriss and NASPSO allegedly suffer is outweighed

by the harm presented by their conduct. The conduct of Burriss and NASPSO in obtaining and

retaining Plan assets for their own use is so outrageous and severe that this impact is outweighed

by the potential for future harm. Accordingly, a temporary restraining order is appropriate.

    **2.**    **The Secretary will likely succeed on the merits and the public interest will be served.**

The facts and discussion above demonstrate a substantial likelihood that the Secretary will

prevail on the merits. The facts set forth in the attached declaration demonstrate a substantial

likelihood that the Secretary will prevail on the merits in this action. As argued above, the

defendants have engaged in serious ERISA violations which have resulted in the loss of Plan

assets. If Burriss and NASPSO are permitted to continue this conduct, more employees of

participating employers will be harmed. Defendants Burriss and NASPSO have transferred Plan

assets to other accounts and have commingled Plan assets with their own assets. This self-dealing and disregard for the Plans is apparent and readily established.

As stated above, the Court has broad discretion under ERISA to fashion such "equitable or remedial relief as the court may deem appropriate" (29 U.S.C. § 1109(a)), and "to enjoin any act or practice which violates any provision of this title or the terms of the plan" or to grant "other appropriate equitable relief" (29 U.S.C. § 1132(a)(5)). *Snyder*, 572 F.2d at 901; *Tomasso*, 682 F. Supp. at 1306 ("Congress intended to make available the full range of legal and equitable remedies in cases of ERISA violations . . . . Accordingly, injunctive relief is available including an injunction to prohibit a party from having further dealings with ERISA-covered plans."); *Reich v. Lancaster,* 55 F.3d 1034 (5th Cir. 1995) (Agency and agent were fiduciaries and violated ERISA, therefore permanently enjoined from serving as fiduciaries or service providers to any ERISA plan); *Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992) (At least one defendant permanently enjoined from serving as fiduciary or service provider to any ERISA plan). All fiduciaries are subject to personal liability under ERISA for violations of their fiduciary duties. 29 U.S.C. §1109(a); *Yeseta v. Baima*, 837 F.2d 380 (9th Cir. 1988). *See also Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). Pursuant to this broad grant of authority, the Secretary is requesting that the Court enjoin the defendants Burriss and NASPSO from exercising authority or control with respect to any plans subject to ERISA and bar them from providing services to or receiving compensation from such plans. Plaintiff also seeks an order freezing the assets of the defendant Burriss and NASPSO, pending further order of the Court, and requiring them to turn over pertinent records.

18

The relief requested is within the broad ambit of the Court's authority and is clearly designed to promote the public interest and redress the violations of ERISA. By enjoining the defendants from additional unlawful activity under ERISA and freezing the assets of the Burriss and NASPSO, the Court can prevent the further misuse of assets and fraudulent conduct by defendants. A freeze is appropriate to preserve the assets for the plans and to maintain the status quo while the Secretary investigates the source and amount of available assets. *See Commodity Futures Trading Commission v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669, 678 (S.D. N.Y. 1979); *In re Estate of Ferdinand Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994)(finding that district court did not abuse its discretion by providing injunctive relief to prevent the transferring, secreting, or dissipating of assets). The production of complete financial and business records will enable the Secretary to determine whether additional assets exist which could be productively marshaled for the benefit of the Pension and whether additional plans, such as the Health Plan, have been harmed by defendants' conduct. Money flowed directly from the Pension Plan to Burriss and NASPSO as a result of ERISA violations, and the Secretary's complaint seeks recovery of the resulting losses. It is essential that the accounts of Burriss and NASPSO be frozen so that money will remain available for the Pension Plan and the Health Plan. At the very least, the burden should shift to Burriss and NASPSO to demonstrate that any of their funds are not the fruits of their fiduciary breaches. *See U.S. v. William Savran & Associates, Inc.*, 755 F. Supp. 1165 (E.D. N.Y. 1991).

The danger that Burriss and NASPSO will continue to breach their fiduciary duties and dissipate any remaining assets is amply demonstrated by the history of the defendants' actions as fiduciaries. They must be enjoined from undertaking any additional activities with respect to

plans covered by ERISA if the public interest is to be protected. An independent fiduciary, David

Lipkin of Metro Benefits, Inc. should be appointed and given plenary authority and control with

respect to the management and administration of the Pension Plan. With respect to the Health

Plan, the SecTek and American Security, Inc. should be ordered not to forward Health Plan

contributions to Burris and NASPSO, but instead forward such contributions directly to the Health

Plan's third party administrator, FCE.

## IV.    Conclusion

The evidence submitted with this application demonstrates the substantial likelihood that

the Secretary will prevail in her action to redress the defendants' serious repeated violations of

ERISA. In order to protect the public interest, preserve the status quo, and prevent future

misconduct, the Secretary is entitled to a temporary restraining order and preliminary injunction

granting the relief requested.

Catherine Oliver Murphy                     Howard M. Radzely
Regional Solicitor                          Solicitor of Labor
Office of the Solicitor
U. S. Department of Labor                   Catherine Oliver Murphy
Suite 630E, The Curtis Center              Regional Solicitor
170 S. Independence Mall West
(215) 861-5139                             Donald K. Neely
                                            Attorney

                                            U.S. DEPARTMENT OF LABOR

                                            Attorneys for Plaintiff